UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN (SOUTHERN DIVISION)

| | |
|---|---|
| The Huntington National Bank, | Case No. 2:13-cv-11632 |
| a national banking association, | Hon. Robert H. Cleland |
| successor to Fidelity Bank and Community | Mag. Michael Hluchaniuk |

Bank of Dearborn,

     Plaintiff,

vs

Najero, Inc., a Michigan corporation,
Norian Properties, Inc., a Michigan corporation,
Kara Development, L.L.C., a Michigan limited
liability company, N C I Services, Inc., a
Michigan corporation, Ice Box Sports Center,
L.L.C., a Michigan limited liability company,
Johno P. Norian and Hagop Norian, jointly
and severally,

     Defendants.

_____

**STIPULATED ORDER GRANTING PLAINTIFF'S MOTION FOR (i)
REINSTATEMENT OF CASE; AND,
(ii) APPOINTMENT OF RECEIVER**

| | |
|---|---|
| Plunkett Cooney | Frank & Frank, P.C. |
| By: Douglas C. Bernstein (P33833) | By: Jerome D. Frank (P13634) |
| Patrick C. Lannen (P73031) | Matthew W. Frank (P66028) |
| Attorneys for Plaintiff | Attorneys for Defendants |
| 38505 Woodward Avenue, Suite 2000 | 30833 Northwestern Hwy., Suite 205 |
| Bloomfield Hills, MI 48304 | Farmington Hills, MI 48334 |
| (248) 901-4000 | (248) 932-1440 |

_____

A.    Plaintiff, The Huntington National Bank ("Huntington"), successor to Fidelity Bank ("Fidelity"), filed its Complaint (Docket No. 1), which included a claim for the appointment of a receiver over the Mortgaged Properties defined below, asserting the breach by Najero, Inc. ("Najero"), Norian Properties, Inc. ("Norian Properties") and N C I Services, Inc. ("NCI") of their obligations under promissory notes and guaranties executed in favor of Fidelity, and assigned to Huntington, as more fully described in the Complaint (collectively, the "Notes" and the "Guaranties," respectively).

B.    Repayment of the indebtedness of Najero to Huntington is secured by a Mortgage executed by Najero (the "Najero Mortgage"), dated as of November 23, 2011, in favor of Fidelity, encumbering real property situated in Brownstown Township, Michigan, commonly known as 21902 Telegraph Road (the "Najero Property"), which was recorded by the Wayne County Register of Deeds on December 7, 2011, in Liber 49505, Page 415, and assigned to Huntington pursuant to an Assignment of Mortgage dated October 24, 2012, which was recorded by the Wayne County Register of Deeds on October 26, 2012 in Liber 50238, Page 702.

C.    Repayment of the indebtedness of Norian Properties to Huntington is secured by a Mortgage executed by Norian Properties (the "Norian Properties Mortgage"), dated as of November 23, 2011, in favor of Fidelity, encumbering

real property situated in Brownstown Township, Michigan, commonly known as 22100 Telegraph Road (the "Norian Property"), which was recorded by the Wayne County Register of Deeds on December 7, 2011, in Liber 49505, Page 438, and which was assigned to Huntington pursuant to an Assignment of Mortgage dated October 24, 2012, which was recorded by the Wayne County Register of Deeds on October 26, 2012 in Liber 50238, Page 1039.

D.   Repayment of the indebtedness of NCI to Huntington is secured by a Future Advance Mortgage executed by NCI (the "NCI Mortgage"), dated July 21, 2003, in favor of Community Bank of Dearborn, encumbering real property situated in Trenton, Michigan, commonly known as 2674 West Jefferson (the "NCI Property," and collectively with the Najero Property and the Norian Property, the "Mortgaged Properties"), which was recorded by the Wayne County Register of Deeds on July 31, 2003, in Liber 38783, Page 794, as amended by a Mortgage Modification Agreement dated April 8, 2005, which was recorded by the Wayne County Register of Deeds on April 29, 2005, in Liber 42584, Page 538, and the NCI Mortgage as amended was assigned to Huntington pursuant to an Assignment of Mortgage dated October 17, 2012, which was recorded by the Wayne County Register of Deeds on October 25, 2012 in Liber 50237, Page 1026.

3

E.      The parties to this action entered into a settlement agreement dated effective as of January __, 2014 (sic) (the "Settlement Agreement"), and a Stipulated Order for Dismissal without Prejudice was entered on September 6, 2013 (Docket No. 26).

F.      Under Section 8.1 of the Settlement Agreement, upon the failure to timely deliver the NCI Sale Agreement (as defined in the Settlement Agreement), Huntington, upon the filing of an affidavit attesting to such failure, had the ability to have this action reinstated, and to have a receiver appointed for the NCI Property, with the powers set forth herein.

G.      Under Section 8.2 of the Settlement Agreement, upon the occurrence of any default, except as set forth in Paragraph F above, Huntington, upon the filing of an affidavit attesting to such default, had the ability to have this action reinstated, and to have a receiver appointed for the Najero Property and the Norian Property, with the powers set forth herein.

H.      Huntington has filed the requisite affidavit, attesting to the default under the terms of the Settlement Agreement, and the Court has reviewed the pleadings, is otherwise fully informed in the premises, and believes that good cause exists for granting the relief sought, consistent with the terms of the Settlement Agreement.

For the reasons set forth above, the appointment of a receiver over the NCI Property, the Najero Property and the Norian Property and other assets used or usable in connection therewith (the "Assets") is appropriate, and consistent with the rights afforded to Huntington in the loan documents and the Settlement Agreement described above.

**IT IS ORDERED:**

1.     **Reinstatement of Action.**  This action is reinstated.

2.     **Appointment of Receiver.**  M. Shapiro Development Company LLC, by its authorized representative, Mark Kassab, with an address of 31550 Northwestern Highway, Suite 200, Farmington Hills, Michigan 48334 (the "Receiver"), is appointed as receiver for the NCI Property, the Najero Property, the Norian Property, the Assets, and all payments, leases, rents, books and records, deposits, bank accounts and other personal property, tangible or intangible, that is used or usable or related thereto (collectively, the "Receivership Property").

3.     **Possession and Control of Receivership Property.**  The Receiver is authorized to immediately take possession and control of the Receivership Property, and to manage, recommend and consummate the sale of same (subject to the approval of the Court), as he deems appropriate, and to otherwise exercise the powers and duties set forth in this Order. The Receiver is

authorized to remove any principal, member, general partner, limited partner,

manager, officer, employee, representative or agent of Najero, NCI and Norian

Properties from control and/or management of the affairs of the Receivership

Property.

4.      **Actions in Furtherance of Possession and Control.**  The

Receiver is authorized to take any reasonable actions which he shall deem

necessary or appropriate to take possession of, to exercise full control over, to

prevent waste and to otherwise preserve, manage, maintain, secure and

safeguard the Receivership Property.

5.      **Surrender of Receivership Property.**  Najero, NCI and Norian

and their managers, members, shareholders, officers, employees and agents are

directed to surrender all of the following relating to the Receivership Property to

the Receiver, to the extent that they are in their possession, custody and control:

  a.      All keys and access codes necessary for the Receiver to
          obtain possession of and to manage the Receivership
          Property, as provided in this Order.

  b.      All documents and records useful in maintenance relating to
          the Najero Property, the NCI Property and the Norian
          Property, including but not limited to, as applicable,
          building permits, plumbing and HVAC drawings, soil
          borings reports, surveys, environmental reports,
          architectural or design diagrams and building specifications.

  c.      All work in process, materials, supplies, "punch lists" and
          other pending work orders with respect to construction at

the Najero Property, the NCI Property and the Norian Property, if any.

d.    All construction contracts and subcontracts for construction on the Najero Property, the NCI Property and the Norian Property, if any.

e.    All bids for contractor work, if any.

f.    All agreements with brokers or other commission agreements pertaining to sales or leases of the Receivership Property, or any portion thereof.

g.    All leases and other executory contracts, including all amendments, pertaining to the Receivership Property, or any portion thereof.

h.    All documents, books, records, computer files and records concerning the finances, rents, operation and management of the Receivership Property.

i.    A list of all accounts receivable and accounts payable, and all details regarding same.

j.    All documents identifying pending litigation.

k.    All utility agreements.

l.    Such other records pertaining to the Receivership Property as may be reasonably requested by the Receiver.

m.    All cash and deposits owned by or in the possession of NCI or its managers, members, shareholders, officers, employees and agents, pertaining to the Najero Property, the NCI Property and the Norian Property.

n.    All documentation pertaining to contracts entered into by Najero, NCI and Norian Properties relating to their business operations and to the Najero Property, the NCI Property and the Norian Property.

7

Notwithstanding any term of this Order to the contrary, the Receiver will permit the Defendants a reasonable opportunity to vacate the Najero Property, the NCI Property and the Norian Property after the entry of this Order.

6.    **Powers and Duties of Receiver.**  The Receiver shall be vested with and shall discharge the following authority, powers and duties:

a.    The maintenance, securing, management, operation, leasing (upon terms acceptable to Huntington) and preservation of the Receivership Property.

b.    The assumption of control over the Receivership Property, including all deposits, security deposits, and other cash collateral relating thereto.

c.    The maintenance of one or more separate accounts, in the Receiver's own name, as Receiver for the Najero Property, the NCI Property and the Norian Property, and all of the Assets, from which the Receiver shall disburse all authorized payments, as provided in this Order.

d.    The preparation and maintenance of books, records and financial reports of the Receivership Property, including but not limited to operating and income statements, balance sheets, and all other statements prepared for the Receivership Property, and provide copies of them to the parties to this action, through their counsel.

e.    The purchase of such insurance as the Receiver deems appropriate for the preservation and protection of the Receivership Property, naming the Receiver and Huntington as additional insureds, or as necessary to protect their interests.

f.    The receipt and endorsement of checks pertaining to the Receivership Property, either in the name of the Receiver or

in the name of Najero, NCI or Norian Properties, as applicable.

g.   The payment of all real estate and personal property taxes, and any other taxes or assessments against the Receivership Property, during the period of the receivership.

h.   Taking such action, including the filing of one or more lawsuits as the Receiver shall deem necessary and appropriate, in its discretion, for the collection of any outstanding accounts receivable or other monies owed to Najero, NCI or Norian Properties, as applicable.

i.   The investigation of any fraudulent or otherwise improper transfers or conveyances of the assets of Najero, NCI and Norian Properties, as the Receiver shall deem necessary and appropriate, and, if necessary, the prosecution of any action to set such transaction(s) aside.

j.   Prevent the withdrawal or misapplication of funds.

k.   Issue such subpoenas as deemed necessary to allow the Receiver to fulfill the duties set forth in this Order.

Notwithstanding anything to the contrary contained in this Order, the Receiver shall not have the authority to file a petition for relief under the Bankruptcy Code for NCI.

7.   **Access to Books and Records.**  The Receiver shall permit Huntington and its agents and counsel and all Defendants, their agents, and counsel, access to the Receivership Property at all reasonable times, to inspect the Receivership Property and the books and records of Najero, NCI and Norian Properties.

8.     **Employment of Third Parties.**  The Receiver is authorized, but
not required to, all without recourse against the Receiver, to employ such
attorneys, accountants, appraisers, agents and others, as the Receiver may from
time to time deem appropriate.  This authorization to employ such attorneys,
accountants, appraisers, agents, and other professionals, as the Receiver deems
appropriate, includes, but is not limited to, the right, with notice given to counsel
for the Defendants, to employ and engage a property manager for the NCI
Property, the Najero Property, and the Norian Property and the Assets.

9.     **Borrowing of Funds.**  Subject to the consent of Defendants or
approval of the Court, without affecting the rights of the parties relating to the
underlying Notes and Guaranties, the Receiver is authorized, but not required, to
borrow funds from Huntington for approved purposes, if necessary, upon terms
and conditions agreeable to Huntington and the Receiver.  Upon receipt of the
approval of the Court, the Receiver shall be authorized to execute all promissory
notes, loan agreements, receiver's certificates, and amendments thereto, as shall
be necessary to accomplish same.

10.     **Exercise of Powers Available Under Applicable Law.**  Without
limiting or expanding the foregoing, the Receiver is authorized to exercise all
powers generally available under federal law or the laws of the State of
Michigan, which may be incidental to the powers described in this Order, and to

act on behalf of and in the name of Najero, NCI and Norian Properties, as the Receiver shall deem appropriate.

11.   **Further Instructions.**  The Receiver shall have the right to apply to the Court for further instructions and authorization during the pendency of this action.

12.   **Protective Advances.**   Subject to the order of the Court, all reasonable advances to the Receiver made by Huntington for the benefit of the Receivership Property, together with any other reasonable costs and expenses incurred by the Receiver pursuant to this Order, shall be deemed to be protective advances pursuant to the Notes, and shall be secured by the Najero Mortgage, Norian Properties Mortgage, and NCI Mortgage, each as applicable, and each such advance shall have priority over all claims and liens of all others claiming an interest in any of the Receivership Property.

13.   **No Transfer of Title.**  Nothing contained in this Order shall be construed to transfer title to any of the Receivership Property to the Receiver.

14.   **Sales of the Najero Property, the NCI Property and the Norian Property.**  The Receiver is authorized to, on behalf and in the name of Najero, NCI or Norian Properties, as applicable, expeditiously and diligently sell the Najero Property, the NCI Property, the Norian Property and the Assets, with the

approval of the Court, consistent with the provisions of 28 U.S.C. §2001(a),

under the following conditions:

a. Each sale shall be for cash, unless otherwise authorized by the Court, for an amount subject to the approval of the Court.

b. Each sale approved by the Court shall be free and clear of all mortgage interests, security interests and other liens, as applicable, which may be transferred to the net proceeds of sales. No person or entity shall have any redemption rights with respect to any sale effectuated by the Receiver, and the sale shall be final upon entry of an Order of the Court confirming same.

15. **Execution of Sale Related Documents.** In connection with the

sales of any of the Receivership Property approved by the Court, the Receiver is

authorized, in the name of Najero, NCI, or Norian Properties, as applicable, to:

a. Execute deeds of conveyance and bills of sale.

b. Attend and consummate closings at the offices of any title company acceptable to the Receiver and Huntington (the "Title Company").

c. Approve, with Huntington, closing statements with respect to the sales of the Najero Property, the NCI Property and the Norian Property, including all costs of closing, sales commissions, and other adjustments to the purchase price.

d. Obtain all mortgage and construction lien waivers, quit claim deeds, and such other documents as are reasonably requested by the Title Company or the Receiver to effectuate the sales of the Najero Property, the NCI Property and the Norian Property, and to allow the issuance of the appropriate owner's policy of title insurance to the purchaser.

16.     **Disbursement of Net Sale Proceeds.**  The "net proceeds of sale" shall be deemed to be the gross sale price of the Assets and the Najero Property, the NCI Property and the Norian Property, jointly or severally, less closing costs, sales commissions, and other adjustments approved by the Court. Disbursement of the net proceeds of sale shall be approved by the Court.

17.     **Lien Priorities.**  The rights and priorities of Huntington and any other parties with respect to the Receivership Property shall be determined in accordance with applicable federal or Michigan law, without regard to the provisions of this Order.

18.     **No Waiver of Claims and Defenses.**  Nothing contained in this Order shall enlarge or restrict the claims and defenses of Huntington or other parties claiming an interest, with respect to the Receivership Property.

19.     **Compensation of Receiver and Agents.**  The Receiver and all persons employed by him, whose services are utilized by the Receiver shall be compensated at their normal rates, with invoices to be issued and copies furnished to the parties to this action, through their respective counsel, on a monthly basis.  The Receiver's general office administration, accounting and overhead shall not be charged against the income generated by the Receivership Property.  The Receiver and his counsel may receive payment on a monthly basis, without further Court order, provided no objections are filed with the

Receiver or his counsel, as the case may be, within seven (7) days after such invoices are mailed to the parties to this action, through their respective counsel. In the event any objections are timely filed, the Receiver or any other party may file a motion with the Court to determine the propriety of the fees sought or of the objection(s). The Receiver shall be reimbursed for any reasonable out of pocket expenses incurred during the period of the receivership concerning the obligations and duties set forth in this Order. The compensation paid to Receiver and his professionals shall be paid first from the income generated from the Receivership Property and, next, by Huntington, but only to the extent that the income from the Receivership Property is insufficient to pay the Receiver and his professionals' compensation.

20. **Receiver's Reports.** The Receiver shall furnish to the Court and to all parties, through their respective counsel, monthly reports and statements accounting for all receipts and disbursements. The reports served upon counsel shall be submitted to the Court for its review *in camera,* and shall not be filed with the Clerk of the Court.

21. **Receiver's Bond.** The Receiver shall post a surety bond in an amount of not less than $10,000.00. The cost of the bond shall be an expense of the receivership, for which the Receiver shall be reimbursed in accordance with the terms of this Order.

22.     **Lawsuits against Receiver.**  No person or entity shall file suit against the Receiver, or take other action against the Receiver, without an Order of the Court permitting the suit or action.

23.     **Pre-Receivership Liabilities.**  Neither Huntington, the Receiver, nor the Receiver's agents shall be liable for any claim, obligation, liability, action, cause of action, cost or expense of Najero, NCI, or Norian Properties, their business operations, or the Receivership Property arising out of or relating to events or circumstances occurring prior to the entry of this Order, including without limitation, any contingent or unliquidated obligations and any liability from the performance of services rendered by third parties on behalf of any of Najero, NCI or Norian Properties, and any liability to which any of them are currently or may ultimately be exposed under any applicable laws pertaining to the ownership, use or operation of the Receivership Property and operation of their businesses (collectively all of the foregoing is referred to as "Pre-Receivership Liabilities").  Huntington, the Receiver, and the Receiver's agents shall not be obligated to advance any funds to pay any Pre-Receivership Liabilities.  Notwithstanding the foregoing, with the prior written consent of Huntington (but not otherwise), the Receiver may fund Pre-Receivership Liabilities from funds collected from the operation of the Receivership Property.

15

24.    **Stay of Actions.**    Except by leave of this Court and except with respect to the right of Huntington to foreclose the Najero Mortgage, the NCI Mortgage, and/or the Norian Properties Mortgage, or to otherwise take any enforcement action against the Receivership Property and the Assets during the pendency of the receivership, Najero, NCI, Norian Properties, and all persons, creditors and entities are stayed from instituting any action to establish or enforce any claim, right or interest for, against, on behalf of, in, or in the name of any of Najero, NCI, Norian Properties, the Receiver, the Receivership Property, the Assets, or the Receiver's duly authorized agents acting in their capacities as such, including but not limited to, the following actions:

   a.    Commencing, prosecuting, litigating or enforcing suit, except that the actions may be filed to toll any applicable statute of limitations;

   b.    Accelerating the due date of any obligation or claimed obligation, enforcing any lien upon, or taking or attempting to take possession of, or retaining possession of, property of Najero, NCI or Norian Properties that relates in any way to the Receivership Property, or attempting to foreclose, forfeit, alter or terminate the interests of Najero, NCI or Norian Properties in the Receivership Property, whether such acts are part of a judicial proceeding or otherwise;

    c.     Using self-help or executing or issuing, or causing the execution or issuance of any court attachment, subpoena, replevin, execution or other process for the purpose of impounding or taking possession of or interfering with, or creating or enforcing a lien upon the Receivership Property; and

    d.     Doing any act or thing to interfere with the Receiver taking control, possession or management of the Receivership Property, or to in any way interfere with the Receiver or the duties of the Receiver or his agents; or to interfere with the exclusive jurisdiction of this Court over the Receivership Property.

This paragraph does not stay the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

25.    **No Personal Liability of Receiver.**  The Receiver and his employees, agents and attorneys shall have no personal liability in connection with any obligations, liens or amounts owed to Najero, NCI or Norian Properties resulting from the performance of their duties pursuant to this Order, it being understood that the rights of each such creditor shall be determined in accordance with applicable law.

26.    **Breaches by Receiver.**  The Receiver and his employees, agents and attorneys shall have no personal liability, and they shall have no claim asserted against them relating to the Receiver's duties under this Order, except for those arising from intentional tortious acts, breaches of fiduciary duties, acts

committed in bad faith, gross negligence, gross or willful misconduct, malicious acts, or the failure to comply with this Order or any other Order of the Court.

27. **Interference with Receiver's Duties.** The parties to this action, those in active participation or concert with them who receive notice of this Order, and those having claims against the Receivership Property who receive notice of this Order, are enjoined from interfering with the Receiver's actions in furtherance of performing the duties and carrying out the responsibilities set forth in this Order.

28. **Receiver as Fiduciary.** The Receiver shall faithfully discharge all of the duties outlined in this Order, and shall obey all other Orders of the Court. The Receiver shall be deemed a fiduciary for the benefit of all persons having or claiming an interest in the Receivership Property, and shall exercise his office accordingly.

29. **Commercial Reasonableness.** The Receiver's actions at all times shall be commercially reasonable, and the Receiver is subject to the personal jurisdiction of the Court.

30. **Acceptance of Appointment as Receiver.** The Receiver's duties to act in accordance with this Order is subject to written acceptance. Upon acceptance, the Receiver shall be bound by the terms of this Order, and all obligations imposed hereby.

18

31.     **Duration of Receivership.**  This receivership shall continue until the earlier of: (i) the sale of all Receivership Property; or, (ii) the further Order of the Court.

32.     **Discharge of Bond.**  The termination of the receivership will not discharge the Receiver or the Receiver's bond.

33.     **Resignation of Receiver.**  In the discretion of the Receiver, the Receiver may notify the Court and the parties that the receivership is no longer practical.  Upon such event, the Receiver's duties shall terminate thirty (30) days after filing the notice with the Court, followed by an Order of the Court terminating the receivership.

34.     **Removal of Receiver.**  The Receiver may be removed either: (i) thirty (30) days after filing of a written demand for removal signed by Huntington's counsel, and filed with the Court; or, (ii) in the Court's equitable discretion, upon a motion for cause.  If the Receiver is removed, a successor receiver can be appointed by a stipulated order on behalf of the parties to this action.  If the parties to this action are unable to agree on a successor receiver, the Court shall appoint a successor receiver, after a motion is filed by any party to this action requesting the appointment of same.

35.    **Final Accounting.**  Within thirty (30) days after the termination of the receivership for any reason, the Receiver shall submit a final accounting for approval by the Court, with copies to be furnished to the parties to this action.

36.    **Court Approval of Final Accounting.**  Upon the Court's approval of the Receiver's final accounting, the Receiver shall be discharged, and his bond canceled.

37.    **Tax Returns.**  The Receiver and his professionals shall not be responsible or required to, and shall not, prepare or file tax returns in connection with the Receivership Property, Najero, NCI or Norian Properties or otherwise wind down the business affairs of the Receivership Property or of Najero, NCI or Norian Properties.

38.    **Lien Enforcement and Foreclosure Rights.**  Nothing in this Order shall be construed to affect the rights of parties who have been granted mortgages or other liens upon property owned by Najero, NCI or Norian Properties, including the right to commence or continue foreclosure proceedings, either judicially or by advertisement.  No further order of the Court is necessary for a mortgagee or lien claimant to commence a foreclosure, either judicially or by advertisement.

39.    **Amendment of Order.**  This Order may be amended for cause, either upon the stipulation of the Receiver and the parties, or for cause, after a

motion and hearing.  No amendment to this Order shall affect the rights of

persons or entities who are able to demonstrate that they relied upon the pre-

existing terms of this Order to their detriment.

40.     **No Prejudice.**  This Order shall not prejudice the rights of any

party to any claim, right or defense which they may have to Huntington's claims

set forth in the complaint.

41.     **Environmental Compliance.**  The Court finds that, Huntington,

in seeking the appointment of the Receiver, is engaged in a "workout activity,"

as that term is defined in M.C.L. §324.20101a(3), and its actions in seeking the

appointment of a Receiver are intended to protect the value and marketability of

the Najero Property, the NCI Property and the Norian Property, which are its

collateral for repayment of the indebtedness described above.  The Court further

finds that Huntington's actions in seeking the appointment of the Receiver, do

not constitute participation in management, as that term is defined in 42 U.S.C.

§9601(a)(20).

42.     **Utilities.**  Any provider of any utility service to the Najero

Property, the NCI Property or the Norian Property is hereby stayed from

stopping any such service, including, but not limited to gas, electricity, water,

heat, cable television and internet.  Any and all such utility service provider is

hereby ordered to provide said utility service in the name of the Receiver.

IT IS SO ORDERED.

s/ Robert H. Cleland
United States  District Court Judge

Dated: June 19, 2014

## ACCEPTANCE OF RECEIVERSHIP

The duties of the Receiver, as set forth in the foregoing Order, are accepted and agreed to.

M. Shapiro Development Company LLC, a Michigan limited liability company

By: _____

Printed name: _____

Its: _____

Dated: _____, 2014

Approved as to form:

Plunkett Cooney

/s/ Patrick C. Lannen
By: Douglas C. Bernstein (P33833)
Patrick Lannen (P73031)
Attorneys for Huntington

Frank & Frank, P.C.

/s/ Jerome D. Frank

By: Jerome D. Frank (P13634)
Matthew W. Frank (P66028)
Attorneys for Defendants


**<u>Drafted by and when recorded, return to:</u>**

Douglas C. Bernstein (P33833)
Plunkett Cooney
38505 Woodward Avenue, Suite 2000
Bloomfield Hills, MI 48304

## EXHIBIT 1

## LEGAL DESCRIPTION

### The Najero Property

Land in the Township of Brownstown, Wayne County, Michigan, described as:

The North 165 feet of the South 365 feet of the Southeast ¼ of the Northeast ¼ of Section 17, Town 4 South, Range 10 East, except the East 102 feet thereof, Brownstown Township, Wayne County, Michigan.  Also, the South 190 feet of the East ½ of the South ½ of the Northeast ¼, Section 17, Town 4 South, Range 10 East, except the East 377.0 feet thereof, also the North 10 feet of the South 200 feet of the East ½ of the South ½ of the Northeast ¼ of Section 17, Town 4 South, Range 10 East, except the East 102.0 feet thereof deeded for road purposes, all in Brownstown Township, Wayne County, Michigan.

Parcel I.D. No. 70-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-702

Commonly known as 21902 Telegraph Road


### The NCI Property

Land in the City of Trenton, Wayne County, Michigan, described as:

Lots 342, 343 and 344 of "ASSESSOR'S TRENTON PLAT NO. 3," according to the plat thereof as recorded in Liber 66 of Plats, Page 49, Wayne County Records.

Parcel I.D. No. 54-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-000
Commonly known as 2674 West Jefferson

24

### The Norian Property

Land in the Township of Brownstown, Wayne County, Michigan, described as:

The South 274.30 feet of the North 482.30 feet of the West 314 feet of the East 416 feet of the Southeast ¼ of Section 17, Town 4 South, Range 10 East, Brownstown Township, Wayne County, Michigan.

Parcel I.D. No. 70-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-000

Commonly known as 22100 Telegraph Road

Open.22387.30754.14200986-1